**440**

William ELSTER, Plaintiff,

v.

Thomas W. ALEXANDER, Nathan T. Bascom, Roger C. Damon, Ben S. Gilmer, Robert L. Gordon, Jr., C. Coleman McGehee, Joseph P. McMurray, Huger Sinkler, Edward D. Smith, Addison H. Reese, Lawrence A. Wilson, First and Merchants Corporation, F&M Tri-South Corporation, First National Holding Corporation, First Atlanta Tri-South Corporation, NCNB Corporation, NCNB Tri-South Corporation, Tri-South Management Associates, Tri-South Mortgage Investors and Price Waterhouse, Inc., Defendants.

No. C75–1069A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 29, 1977.

See also, D.C., 75 F.R.D. 458.

Edward L. Savell (Savell, Williams, Cox & Angel), Atlanta, Ga., Ira Jay Sands and Sidney A. Florea, Demov, Morris, Levin & Shein, New York City, for plaintiff.

Ronald L. Reid and Sidney O. Smith, Jr. (Alston, Miller & Gaines), Atlanta, Ga., for Price Waterhouse, Inc.

Allen Post and Gary Hatch (Hansell, Post, Brandon & Dorsey), Atlanta, Ga., for defendants.

## ORDER OF COURT

MOYE, District Judge.

This is a motion for class certification under Fed.R.Civ.P. 23 in an action which alleges common law fraud and violation of the Securities Exchange Act of 1934, sections 10, 14, 18 and 20,[1] and Rules 10b–5 and 14a–9[2] promulgated thereunder. Plaintiff William Elster (Elster) purchased 25 shares of the stock of defendant Tri-South Mortgage Investors (TSMI) on June 29, 1973, and now seeks to represent the class of all persons who purchased such stock between January 1, 1973, and September 30, 1974.

Defendant TSMI is a real estate investment trust whose principal activities include making short-term construction, development, and acquisition loans, intermediate loans on income properties, and long-term mortgage loans. Plaintiff's complaint is based upon the allegation that defendants engaged in a continuous plan and conspiracy from January 1, 1972, to September 30, 1974, to conceal from the holders and purchasers of TSMI shares and the investing public, the true picture of its poor financial condition and operation, the true condition of the loans made by TSMI and extent to which those loans had defaulted. Plaintiff contends that defendants substituted for a gloomy reality, an inflated picture of TSMI earnings by circulating among the investing public certain false, fraudulent and misleading statements. The particular statements by defendants which plaintiffs challenge are: two prospectuses dated February 8, 1972, and February 6, 1973; seven quarterly reports from March 1973 to September 1974; and the 1973 annual report.

Plaintiff purchased 25 shares in TSMI on June 29, 1973, and by this motion filed pursuant to Fed.R.Civ.P. 23(b)(3), he seeks to represent approximately 8,500 persons who purchased any of TSMI's 2.2 million shares during the period from January 1, 1972 to September 30, 1973.

In order to maintain a class action, the burden is on the plaintiff to show that he has met the requirements of Fed.R.Civ.P. 23 which provides:

1. 15 U.S.C. §§ 78j; 78n; 78r; 78t.

2. 17 C.F.R. §§ 240.10b–5, 240.14a–9.

(a) . . . (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

.     .     .     .     .

(b)(3) the court finds that the questions of law or fact common to the members of the class predominates over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy

.     .     .     .     .

Typically, the most difficult hurdle for the party attempting to certify his class involves the issues of whether there are class-wide common questions of law or fact and whether those common questions predominate over any individual question. While securities fraud cases are often well suited to class action treatment, *Green v. Wolf Corp.*, 406 F.2d 291, 295–296 (2d Cir. 1968), in the present action, plaintiff seeks recovery under several theories which present such diverse individual questions that they are inappropriate for class treatment.

■ Plaintiff's allegations of common law fraud raise questions of fact and law under the law of each state in which the class member made a purchase. The complaint alleges that class members reside throughout the county. Considering the size of the potential class to be 8,500 members, it is likely that the claim for relief based upon common law fraud would involve the laws of all 50 states. With no single law governing the entire class, the allegation of common law fraud cannot be shown to warrant class treatment. *See Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 482 F.2d 880 (5th Cir. 1973); *King v. Sharp*, 63 F.R.D. 60 (N.D.Tex.1974); *Adise v. Mather*, 56 F.R.D. 492 (D.Col.1972).

■ Plaintiff also alleges violations of sections 18(a) and 14(a) of the Act. To test a claim under section 18(a), this Court will be confronted with questions of individual reliance. *See Heit v. Weitzen*, 402 F.2d 909, 916 (2d Cir. 1968), *cert. denied*, 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969); *Barotz v. Monarch General, Inc.*, CCH Fed.Sec.L. Rep. ¶ 94,933 (S.D.N.Y.1975), and the applicable statute of limitations as it is dependent on state law. *Hudak v. Economic Research Analysts, Inc.*, 499 F.2d 996 (5th Cir. 1974), *cert. denied*, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821. Therefore, the Court concludes that claims under 14(a) and 18(a), like the common law claims, are inappropriate for treatment as class actions because they present substantial and predominate individual questions.

■ Primarily, plaintiff rests his request for class certification upon the claims which arise under section 10 of the Act and rule 10b–5. The amended complaint alleges that defendants engaged in a common course of action consisting of the issuance of a series of interrelated financial reports and statements made from January 1, 1972, to September 30, 1974. The principal theory of recovery under this section 10 claim is based on nondisclosure. Defendant argues that the same issue of individual reliance which precludes class treatment under sections 14 and 18 also precludes class treatment of the rule 10b–5 claim.

The degree of individual reliance which must be proven in a 10b–5 action is unsettled in the fifth circuit. *Compare Affiliated UTE Citizens of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1971), *with Simon v. Merrill Lynch, supra*. However, even if plaintiff's view is correct and the 10b–5 allegations were otherwise proper for class treatment, Elster's claim under 10b–5 would not be typical of all those in the proposed class. He bought his stock six months after the start of the class period, but 15 months before the end. In such a situation, plaintiff would have an interest in maximizing the significance of events that preceded his purchase while there would be no incentive to prove that

the violations continued after his purchase. It has been observed that a representative in such a position cannot represent those who purchased stock after the proposed representative did. *Robinson v. Penn Central Co.*, 58 F.R.D. 436, 443 (S.D.N.Y.1973). Thus if this Court were to certify the class action with Elster as its sole representative, it would define the class only as those who purchased between January 1, 1973 and June 29, 1973.

But even in that limited class of those who purchased between January 1, 1973, and June 29, 1973, the common questions based on rule 10b–5 do not predominate over the individual questions raised by the common law allegations or the section 14 and 18 claims. The Court recognizes that it has the discretion to separate the allegations not suited for class action from those which are, and thus to proceed with only the 10b–5 claim being certified for class treatment. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Tober v. Charnita, Inc.*, 58 F.R.D. 74 (M.D.Pa.1973). Such a procedure in this case would lead to serious problems concerning Elster's representation of the class. Plaintiff, who would be allowed recovery under any one of four theories, would likely lack the proper incentive to diligently pursue recovery under rule 10b–5. *See Amswiss International Corp. v. Heublein, Inc.*, 69 F.R.D. 663 (N.D.Ga.1975); *Robinson v. Penn Central Co.*, 58 F.R.D. 436 (S.D.N.Y. 1973). While the Court would be imposed with the duty of monitoring plaintiff's conduct to avoid such prejudice to class members, such a task would be unmanageable in this case.

Moreover, the Court is not convinced that a class action is superior to other available methods for the fair and efficient adjudication of the 10b–5 claim. The purpose of the class action device is to "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Fed.R.Civ.P. 23, Advisory Committee's notes. In evaluating the superiority requirement, the absence of other actions by class members is a relevant and significant consideration. If there were a substantial number of actions of a similar nature filed in this or other courts, this would be a factor favoring certification. *Plekowski v. Ralston Purina Co.*, 68 F.R.D. 443, 453 (M.D.Ga.1975). However, in the present case, precisely the opposite is true. It appears that a description of this litigation has appeared in each TSMI quarterly and annual report to shareholders since this suit was filed, yet no other shareholder has filed suit or sought to intervene. This Court is unwilling to breathe the spirit of judicial combat into 8,500 persons who, so far, have shown no desire to litigate this matter. Moreover, the Court is unwilling to empower one unhappy investor with the enormous power of class representative when such is unnecessary.

Furthermore, in deciding whether a class action is superior to individual actions, the Court must find that the number of individual actions will actually be reduced. That is not true in this action. In order to resolve the common law claims and allegations involving sections 14(a) and 18(a), an individual must commence an individual action. The treatment of the rule 10b–5 claim in a class action would not reduce the total amount of litigation. To the contrary, certification of the rule 10b–5 claim as a class action would create a judicial nightmare which would be partially litigated in this forum and partially litigated throughout the state courts of this nation. Fed.R. Civ.P. 23, which is designed as an instrument of convenience, should not be abused to create such a burden on judicial resources.

In summary, although an argument has been made for treatment of this action as a piecemeal class action, the Court finds that the problems of manageability, representation, and individual questions preclude this action from being treated as a class action. The Court finds that a class action would not be superior to individual claims in light of the present posture of this case. Accordingly, plaintiff's motion for certification of a class action is denied and this case shall

proceed as an individual claim upon the amended complaint.

SO ORDERED.